Upon review of all of the competent evidence of record with reference to the errors assigned, and finding good grounds to reconsider the evidence, the Full Commission REVERSES the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award:
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner and in a Pre-trial Agreement as:
 STIPULATIONS
1. The date of the alleged injury which is the subject of this claim is August 28, 1995.
2. On said date, an employment relationship existed between plaintiff-employee and defendant-employer.
3. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
4. Plaintiff's average weekly wage is to be determined by reference to an I.C. Form 22 wage chart filed by the employer.
5. Plaintiff last worked for the defendant-employer on October 9, 1995.
6. On the date of the alleged injury by accident, the employer was an approved, self-insured, and Alexsis, Inc., was the administrator.
7. Plaintiff's medical records are stipulated into evidence.
***********
Based upon all of the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of hearing, plaintiff was fifty-five (55) years old. On August 28, 1995, she was employed as a riveter for defendant-employer and was responsible for setting rivets and metal parts which were component pieces in furniture.
2. On August 28, 1995, as plaintiff was going down some steps to punch in on the time clock at work, her leg "flew out" from under her and she fell and landed on her buttocks. Plaintiff immediately felt sensations she described as feeling like electric shocks and burning up through her spine and up in her shoulders and neck. Plaintiff did not report her fall to her supervisor on the day it occurred. She testified she was afraid to mention it because she was already sick when she went to work and when she mentioned to her supervisor that she needed to take time off to see a doctor for her illness, "he didn't seem like he liked it too good".
3. Plaintiff sought treatment at PrimeCare on the day following her fall at work for coughing, nausea, and dizziness. Plaintiff did not mention her fall at work on the previous day.
4. Plaintiff had received medical treatment for pre-existing back problems at PrimeCare of Winston-Salem, North Carolina in 1994 and continuing until and beyond the day of her fall. Plaintiff had scoliosis and degenerative joint disease. She had experienced back pain since 1993 and had reported pain radiating down the right leg and right knee since late October, 1994. She had been taken out of work for three days beginning July 28, 1995, for bed rest prescribed by PrimeCare because of back pain.
5. Plaintiff reported her fall to her supervisor on or about September 5, 1995. A written report of the incident was prepared on September 12, 1995, which was consistent with plaintiff's testimony at the hearing before the Deputy Commissioner and the histories given to her treating physicians that she had fallen as a result of her leg flying out from under her.
6. After receiving the report of injury, defendant-employer obtained a medical appointment for plaintiff at High Point Orthopaedics. Plaintiff was seen on two occasions by Dr. Mark Rowley, an orthopaedic surgeon. Dr. Rowley noted on the records of his first treatment of plaintiff on September 15, 1995 that plaintiff had adult scoliosis with severe degenerative joint disease and an acute low back strain. He prescribed that plaintiff be restricted to no lifting over 20 pounds for six weeks. This was the first occasion that plaintiff had discussed her fall with a doctor.
7. Dr. Rowley causally related plaintiff's acute low back strain to her fall at work.
8. Dr. Rowley next saw plaintiff on September 25, 1995. Plaintiff was having pain in her back and some numbness in her legs. Dr. Rowley repeated his physical examination of plaintiff, reviewed her x-rays, and performed a neurologic examination. He concluded that plaintiff suffered from severe degenerative spine disease secondary to longstanding scoliosis and that plaintiff's symptoms of leg numbness were attributable to her degenerative condition and not the acute back strain. Dr. Rowley further concluded that plaintiff's back strain as a result of her fall had resolved and he returned plaintiff to regular duty without restrictions on September 25, 1995. Prior to September 25, 1995, plaintiff had not missed any time out of work related to her fall. Dr. Rowley opined that in view of plaintiff's pre-existing back problems, these back problems would ultimately limit the type of work she could perform in the future.
9. Plaintiff resumed her regular duties without restrictions and worked until October 5, 1995. On October 9, 1995, plaintiff met with Bill Farrell, director of human resources for the company, and asked for time off to pursue treatment for her previous, non-work related, back condition. Plaintiff drew short-term disability benefits for 13 weeks, the maximum allowed under a plan provided and paid for by the employer.
10. Plaintiff sought medical treatment on October 9, 1995 with Dr. Steven Pribanich of PrimeCare who referred her to Dr. Stephen Hughes. Dr. Pribanich also diagnosed plaintiff as having scoliosis.
11. Plaintiff saw Dr. Stephen Hughes, an orthopaedist at Bowman Gray School of Medicine in Winston-Salem, North Carolina on October 10, 1995. He ordered various diagnostic tests, including an MRI, a myelogram, and a CT myelogram, and was ultimately of the opinion that plaintiff had severe scoliosis and stenosis in her lumbar spine causing radiating pain into her leg. Dr. Hughes recommended a Functional Capacity Evaluation and possibly a vocational rehabilitation consultation. An FCE was performed under the direction of Dr. Hughes on January 24, 1996, which indicated that the plaintiff had a zero percent (0%) functional strength deficit and that any impairment she may have had did not appear to be having any impact on her functional ability. Nevertheless, Dr. Hughes recommended that plaintiff work at a light/medium physical demand level, for an eight-hour day.
12. Dr. Hughes concluded that plaintiff was not a surgical candidate, and on January 31, 1996, plaintiff requested that Dr. Hughes provide for her to return to work with some modified restrictions consistent with her FCE. Dr. Hughes was of the opinion that plaintiff should return to work, but he did not prescribe any restrictions.
13. At the request of the employer, plaintiff underwent an independent medical evaluation by Dr. Michael D. Gwinn of the Spine and Physical Medicine Center, Carolina Rehabilitation Associates, P.A., in Raleigh, North Carolina who concluded after an extensive review of plaintiff's medical history, including her medical records and diagnostic studies as follows:
. . . [W]hat we are likely seeing is progression of the degenerative changes in her back, and although the fall may have had some impact, it is my opinion that the fall had only a minor impact on her condition. The degenerative changes, lumbar spinal stenosis, and lumbar scoliosis would be considered pre-existing. As far as I can tell from review of the medical records and the radiographic studies, there do not appear to be any objective changes from before the fall to the time after the fall.
14. Dr. Gwinn's opinion differs from that of Dr. Hughes. It was Dr. Hughes opinion that plaintiff's symptoms changed after her fall and that plaintiff's fall caused an aggravation of her pre-existing scoliosis condition resulting in new radiculopathy, causing her function to decline. In examining records of treatment of plaintiff before the fall of August 28, 1995, Dr. Hughes testified that he was unable to find any clear evidence of pre-existing radiating pain. However, the medical records of PrimeCare dated March 2, 1995, do reference plaintiff's report of radiating pain prior to August 29, 1995. The records note: "Exacerbation of the DDD/sciatica with pain descending left leg laterally to foot." Dr. Hughes never assigned plaintiff any permanent partial impairment rating, but it was his opinion that plaintiff was capable of working within the parameters outlined in the functional capacity evaluation as of January 17, 1996, and that plaintiff probably reached maximum medical improvement in January, 1996.
15. Dr. Pribanich was of the opinion that plaintiff had recovered from any injury resulting from her fall by February 5, 1996, and that he was unable to assign her any permanent impairment rating. However, because of plaintiff's scoliosis and her opinion about what she could do, Dr. Pribanich recommended that plaintiff do light work with maximum lifting limited to ten pounds and that her work be limited to approximately five hours a day. He assigned these as permanent restrictions.
16. At the expiration of her medical leave, plaintiff did not return to work because she was being treated by Dr. Hughes and surgery was being considered. Plaintiff met again with Bill Farrell on February 5, 1996 to discuss her medical restrictions and return-to-work options. Plaintiff was asked to identify an available job that she believed she could perform, with accommodations, if necessary. Plaintiff was unable to identify a job that she believed she could perform and she did not ask for any accommodations. The employer did not specifically offer plaintiff a particular job either as it already existed or with modifications. The employer was operating on a four-day, ten hour work day at the time. At this point in the meeting plaintiff testified that she was fired and the employer testified that she resigned, saying that she would have to quit so that she could look after her back.
17. Plaintiff suffered an injury by accident arising out of and in the course of her employment on August 28, 1995 when her leg flew out from under her as she was descending steps at work. Plaintiff's fall was not due to an idiopathic condition.
18. As a result of her fall on August 28, 1995, plaintiff suffered low back strain.
19. Plaintiff did not miss work as a consequence of her injury by accident. Greater weight is accorded to the medical opinion of Dr. Rowley that plaintiff's back strain as a result of her fall had resolved by September 25, 1995, and that plaintiff's pre-existing degenerative spine disease and scoliosis were causing plaintiff's leg numbness and other symptoms after September 25, 1995.
20. As a result of plaintiff's injury by accident, she required medical treatment up to and including September 25, 1995.
21. Plaintiff, at all relevant times, had an average weekly wage of $369.53. After receiving short-term disability for 13 weeks for non work-related physical problems, plaintiff terminated her employment with defendant-employer on February 6, 1996.
***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On August 28, 1995, plaintiff sustained an injury by accident arising out of and in the course of her employment. N.C. Gen. Stat. § 97-2(6).
2. As a result of plaintiff's fall, she sustained low back strain which resolved by September 25, 1995. Plaintiff's pre-existing conditions were responsible for any disability she suffered after September 25, 1995.
3. As a result of plaintiff's injury, she did not miss any time from work, but she did require medical treatment to effect a cure, provide relief, or lessen her disability through September 25, 1995.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay all medical expenses incurred by plaintiff through September 25, 1995 as a result of her compensable injury of August 28, 1995 when bills for same have been submitted to defendant and approved pursuant to procedures established by the Commission.
2. Defendant shall bear the costs of this proceeding, including an expert witness fee of $250.00 to Dr. Mark A. Rowley.
 S/_____________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_____________ J. HOWARD BUNN, Jr. CHAIRMAN
S/_____________ RENEE C. RIGGSBEE COMMISSIONER